382 So.2d 234 (1980)
Erastus BRYANT, Plaintiff-Appellant,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant-Appellee.
No. 7466.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1980.
*235 Rester, Van Norman & Wright, John L. Van Norman, III, Lake Charles, for plaintiff-appellant.
Pugh & Boudreaux, Charles J. Boudreaux, Lafayette.
Jones, Patin, Tete, Nolen & Hanchey, William M. Nolen, Lake Charles, for defendant-appellee.
Before CULPEPPER, GUIDRY and DOUCET, JJ.
CULPEPPER, Judge.
This is the second time this medical malpractice suit has been before us. Plaintiff, Erastus Bryant, sued St. Paul Fire and Marine Insurance Company, as the insurer of Lake Charles Memorial Hospital (hereinafter HOSPITAL). Plaintiff alleged that the HOSPITAL, through its employees, including one Dr. Arthur Rhoades, the emergency room physician, was negligent in the care rendered to plaintiff's son, Elijah Bryant, causing the son's death. A trial by jury was commenced. After the close of plaintiff's evidence, the trial judge granted defendant's motion for directed verdict, based on a lack of evidence as to the "community standards" of medical practice for hospitals and physicians. Plaintiff appealed. This court reversed and remanded, 365 So.2d 537 (3rd Cir. 1978). After remand, a second jury trial was held, and the jury returned a verdict for defendant, finding no negligence on the part of either the non-physician employees of the HOSPITAL or of Dr. Rhoades. Plaintiff again has appealed.
On this appeal, plaintiff contends the instructions given as to the duty of a physician practicing in a particular specialty confused *236 the jury and increased plaintiff's burden of proof beyond that necessary to prove his case.
There is no dispute as to the facts. They are essentially as set forth in our previous opinion. The only thing we might add is that Dr. Avery Cook, coroner of Calcasieu Parish, performed his autopsy on the day following the death. Dr. Rhoades was present. These two were the only physicians who testified. Dr. Cook was quite positive in his testimony that the ambulance ride probably had no effect at all on the deceased's condition or death. He also stated that the care provided at the hospital emergency room was good, adding the opinion that the injury to the two major blood vessels could not have been detected in an emergency room examination. Based on his experience as a pathologist, Dr. Cook expressed the belief that Bryant would not have survived "if you'd had him in Houston, with Dr. DeBaky and Cooley both operating." When asked to explain this position, he stated:
"Well, first I think you would have had to made the diagnosis that the injury was in the area that it ultimately was found to be in. You would have to be prepared immediately to get in there and do something about it, a major procedure. You'd have to have the equipment and personnel ready to go, and it's conceivable that something could be salvaged in one of these cases occasionally, but you'd have to have a lot of things working for you to turn out differently from this."
Plaintiff's only specification of error is that the trial court erred in failing to properly instruct the jury in accordance with our decision when the case was previously before us, 365 So.2d 541. In his brief, plaintiff states the trial judge correctly instructed the jury on the standard of care with respect to hospitals. The jury charges to which plaintiff objects are those concerning the duty of a physician who practices in a particular specialty. The charge in question reads as follows:
"It is the duty of a physician who practices in a particular specialty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same medical specialty, and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case.
"In judging the question of negligence, if you find that Dr. Rhoades did all that reasonably careful specialists, skilled in this specialty, could have done, you must find that the defendant is not negligent.
"A medical specialist is not required to exercise the highest degree of skill and care possible. He is not an insurer or guarantor of results, in the absence of an express agreement to that effect. When he undertakes the treatment of a case, he undertakes to use that skill and care ordinarily exercised by physicians within the same medical specialty in which he practices.
"Louisiana law does not impute negligence to the physician who fails to follow that course of treatment which at a later date, may be proved to be the wiser course. The physician is only responsible for exercising his best judgment and administering reasonable care.
"It is not sufficient to show simply that an unfortunate result followed, and you cannot find in favor of plaintiff on the basis of Dr. Rhoades' conduct unless you find negligence on the part of Dr. Rhoades.
"I charge you that the law accords physicians the presumption that they have done their duty, in the absence of any evidence to the contrary, and in a suit for injury caused by alleged malpractice of a physician the burden is on the plaintiff to prove the want of reasonable or ordinary care or skill.
"In summary, in order for you to find that Dr. Rhoades failed to meet the standard of care, you must find that the following has been proven:
"1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by those physicians practicing within the particular speciality.

*237 "2) That the doctor either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; and
"3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the decedent suffered injuries that would not otherwise have been incurred and that his death resulted therefrom.
"In determining whether or not a physician exercised the degree of skill and care ordinarily employed by other physicians, and whether he used reasonable care and diligence, along with his best judgment, in caring for the plaintiff, you must be guided by the testimony and the opinions of the experts who have testified in this case."
Plaintiff contends these jury instructions erroneously placed upon him the burden of proving that Dr. Rhoades was an expert in the field of traumatic medicine, and that other experts in the field of traumatic medicine would have initiated different procedures. He argues that since this suit is not against Dr. Rhoades or his insurer, but is only against the HOSPITAL'S insurer, the effect of these charges is to require the plaintiff to prove a breach of duty either under the community standard for physicians or under the duty of medical specialists, "thereby insulating the hospital from any negligence of its employees when they are physicians."
We have difficulty understanding plaintiff's argument. It appears to be that although plaintiff could not recover if this suit were against Dr. Rhoades, since plaintiff has not shown a deviation by Dr. Rhoades below the standard of care expected of specialists in traumatic injuries, he may nevertheless recover from the HOSPITAL'S insurer, based on Dr. Rhoades' negligence, without the necessity of proving either the standard of care of the medical specialty or that Dr. Rhoades breached that standard. This contention ignores the fundamental concept of respondeat superior that the liability of the master is only vicarious to the liability of the servant. The duty of care at issue is that of the servant, and it must be proved that this duty was breached before the master can be held liable. Thus, in the present case, the duty of care at issue is that of Dr. Rhoades.
There is no question that Dr. Rhoades was a specialist in traumatic injuries. This was a holding in our previous decision. This fact is also proved by the evidence in the record before us on this appeal. As such, Dr. Rhoades was subject to the higher standard of care as announced by our Supreme Court in Ardoin v. Hartford Accident & Indemnity Company, 360 So.2d 1331 (1978) and as provided by LSA-R.S. 9:2794, which reads as follows:
§ 2794. Physicians and dentists; malpractice; burden of proof; jury charge
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., or a dentist licensed under R.S. 37:751 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians or dentists practicing in the same community or locality to that in which the defendant practices; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians or dentists within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
B. Any party to the action will have the right to subpoena any physician or *238 dentist either for a deposition and/or testimony for trial to establish the degree of knowledge or skill possessed or degree of care ordinarily exercised as described above without obtaining the consent of the physician or dentist who is going to be subpoenaed. The fee of the physician or dentist called for deposition and/or testimony under this Section will be set by the court.
C. In medical malpractice actions the jury shall be instructed that the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the physician or dentist. The jury shall be further instructed that injury alone does not raise a presumption of the physician's or dentist's negligence. The provisions of this Section shall not apply to situations where the doctrine of res ipsa loquitur is found by the court to be applicable.
As to physicians, this statute clearly imposes upon the plaintiff the burden of proving: (1) the applicable standard of care; (2) a breach of that standard; and (3) that the breach of that standard was a cause of the injuries. The trial judge correctly charged the jury on the duty of care of medical specialists, and that the plaintiff had the burden of proving that standard. We find no error in the charge questioned by plaintiff.
Looking at the record as a whole, the evidence clearly supports the jury's finding of fact on the two interrogatories it answered. In answer to Interrogatory No. 1, as to whether any nurse, aide, technician or orderly employed by the HOSPITAL was guilty of negligence, the jury stated "No." In answer to Interrogatory No. 2, as to whether Dr. Rhoades was guilty of any negligence which caused Bryant's death, the jury stated "No." Having found no negligence on the part of either the non-physician employees of the HOSPITAL or of Dr. Rhoades, it was unnecessary for the jury to answer the interrogatories as whether Dr. Rhoades was an employee of the HOSPITAL or whether Bryant was guilty of contributory negligence.
We have no difficulty in concluding the jury was not manifestly erroneous or clearly wrong in its findings of fact.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
Affirmed.